UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:  VINCENT VIGIL and                                    No. 13-05-51076 MA
        DONNA VIGIL,

        Debtors.

# MEMORANDUM OPINION

THIS MATTER is before the Court on the Chapter 13 Trustee's Objection to Confirmation of Debtors' Plan ("Objection"). At issue is whether Debtors should be permitted to make payments on two debts secured by personal property directly to those creditors. The Chapter 13 Trustee urges the Court to adopt a general rule that would require all debts secured by personal property be paid through a Chapter 13 plan of reorganization and disbursed by the Chapter 13 Trustee, absent unique or compelling circumstances justifying direct payment. The Chapter 13 Trustee argues that there are no unique or compelling circumstances present in the instant proceeding sufficient to warrant direct payments to these creditors outside the Debtors' plan. The Debtors counter that the Bankruptcy Code authorizes debtors to confirm plans that provide for debtors to make disbursements directly to creditors, that it has been the long standing practice within this district that plans may provide for direct payments to secured creditors, and that the facts and circumstances present in this case are sufficient to justify the direct payments to the secured creditors as proposed under the Debtors' Chapter 13 plan.

At the final hearing on confirmation of the Debtors' Chapter 13 Plan, the Court directed the parties to file briefs on this issue, and authorized the filing of amicus briefs. Several attorneys and the National Association of Chapter Thirteen Trustees filed amicus briefs in

1

support of the Chapter 13 Trustee's position.[1]  Several attorneys filed amicus briefs in support of the Debtor's position that a debtor's plan may provide for direct payments to secured creditors.[2]  Because the briefs filed by the attorneys in opposition to the Chapter 13 Trustee were filed after the last date identified in the Stipulated Order Amending Briefing Schedule, the Chapter 13 Trustee requested that all briefs filed after March 31, 2006 be stricken as untimely filed.[3]  The Court will grant the Chapter 13 Trustee's motions to strike the amicus briefs filed by the attorneys in opposition to the Chapter 13 trustee because the briefs were untimely.  In issuing this Memorandum opinion, the Court has not considered any of the amicus briefs filed after March 24, 2006.

FACTS AND BACKGROUND

Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December

---

[1] *See* Amici Brief in Support of Objection to Debtors' Direct Payment of Personal Property Debt (Docket # 16), filed by Donald Provencio, P. Diane Webb, and Karen Blomberg Grabeklis; Brief in Support of Chapter 13 Trustee's Objection to Debtors' Direct Payment of Personal Property Debt by Jeffery A. Goldberg, as Amicus Curiae (Docket #17); and Amicus Curiae Brief on the National Association of Chapter Thirteen Trustees Supporting Chapter 13 Trustee ("Amicus Brief NACCT")(Docket # 18), filed by Henry E. Hildebrand, III and Tracy L. Schweitzer, counsel for the National Association of Chapter Thirteen Trustees.

[2] *See* Brief of Amicus Curiae in Opposition to Trustee's Objection to Confirmation filed by Michael K. Daniels and Gary B. Ottinger. (Docket # 22).  The following attorneys concurred in the brief submitted by Michael K. Daniels and Gary B. Ottinger:   Daniel J. Behles; Walter L. Reardon; Will Jeffrey; and Allan L. Wainwright.  *See also* Brief of Amici Curae in Opposition to Trustee's Objection to Confirmation filed by George M. Moore, Arin Berkson, and Bonnie Gandarilla (Docket # 24); Amicus Brief in Support of Plan Provision Providing for Direct Payment by Debtors of Some Debt filed by Scott Pistone and Michael Lash (Docket # 27).

[3] *See* Motion to Strike as Late-Filed Brief of Amicus Curiae in Opposition to Trustee's Objection to Confirmation (Docket # 25) and Motion to Strike as Late-Filed Brief of Amicus Curiae in Opposition to Trustee's Objection to Confirmation (Docket #26) (together, "Motions to Strike").

2

14, 2005. As this case was filed subsequent to October 17, 2005, it is subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Debtors' Chapter 13 Plan proposes to make monthly payments of $486.00 for a period of sixty (60) months, beginning January 10, 2006, and on the tenth day of each month thereafter for the duration of the plan. The total amount of the Debtors' monthly net income reported on their Schedule J is $656.68. The Chapter 13 Plan proposes to make direct payments to the following secured creditors: US Bank[4]; General Motors Acceptance Corporation ("GMAC"); and New Mexico Educators Federal Credit Union ("NMEFCU"). GMAC is listed on Debtors' Schedule D as a secured creditor with a lien against a 2003 GMC Envoy. NMEFCU is listed on Debtor's Schedule D as a secured creditor with a lien against a 2000 Chrysler 300M Sedan and a 2003 VTX 1800r Motorcycle. The amount of debt and the collateral values attributed to the secured claims of GMAC and NMEFCU as reflected on Debtors' Schedule D are as follows:

|        | Collateral Value | Debt        |
|--------|------------------|-------------|
| GMAC   | $24,275.00       | $25,625.00  |
| NMEFCU | $20,610.00       | $11,781.00  |

GMAC filed a proof of claim for a secured claim in the amount of $25,100.09. (Claim # 5). NMEFCU filed a proof of claim in the amount of $15,893.67, of which $11,315.92 is claimed as secured. (Claim # 4). NMEFCU later amended its proof of claim, filing a secured claim in the amount of $15,514.19, plus interest, secured by a motor vehicle and a motorcycle. (Claim #13). The documents attached to the amended proof of claim suggest that the latest loan consolidated outstanding obligations to NMEFCU, including an unsecured signature loan in the original

---

[4]US Bank holds a mortgage against the Debtors' principal residence. The Trustee has not objected to Debtors' proposal to pay US Bank directly outside the plan.

principal amount of $2,000.00. The amount of the Debtors' regular monthly payment to NMCU is $325.00. (*See* Schedule J). The amount of the Debtors' regular monthly payment to GMAC is $525.35. (*See* Supplement to Chapter 13 Plan). Debtors' plan proposes to pay the claims of NMEFCU and GMAC in the respective amounts of $11,781.00 and $24,275.00 in full by making the regular monthly payments directly to those creditors. The plan provides further that the Debtors will contribute the amount of the monthly payments to NMEFCU and GMAC to their monthly plan payments for the remainder of the plan term upon completion of the payments due NMEFCU and GMAC under their respective contracts. The supplement to Debtor's plan recites that the last projected payment for the debt to GMAC is November 24, 2009, and the last projected payment for the debt to NMEFCU is October 13, 2010, with a final payment of $140.54 due on November 13, 2010.

## DISCUSSION

Whether the Debtors may make direct payments to secured creditors, rather than paying through the plan for disbursement by the Chapter 13 trustee implicates several provisions of the Bankruptcy Code. Section § 1326(c), governing payments proposed under a debtor's chapter 13 plan provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.
>
> 11 U.S.C. § 1326(c).

Section 1322(a)(1) provides:

> The plan shall --
> (1) provide for the submission of all or such portion of future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.

4

>  11 U.S.C. § 1322(a)(1).

Subsection (2) of 11 U.S.C. § 1326(a) provides that upon confirmation of a chapter 13 plan,

> the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.
>
> 11 U.S.C. § 1326(a)(2).

The Chapter 13 Trustee argues that these sections, read together and taken as a whole within the overall scheme of the Bankruptcy Code create the presumption that payments should normally be made through the trustee. Many courts agree, and have enunciated a general rule that ordinarily, all payments to creditors must be made through the Chapter 13 Trustee. *See, e.g., In re Perez,* 339 B.R. 385, 389 (Bankr.S.D.Tex. 2006) (noting that "[t]he general rule is that debtors make monthly payments to the trustee, who then disburses the monies to holders of allowed claims," and considering a local rule that required all residential mortgage payments be made through the trustee); *In re Barber,* 191 B.R. 879, 885-886 (D.Kan. 1996) (concluding that "deviation from the normal periodic payments to the trustee should only be departed from when the debtor can demonstrate a significant reason for doing so."); *In re Reid,* 179 B.R. 504, 507 (Bankr.E.D.Tex. 1995) ("[T]he general rule requires that debts provided for in a Chapter 13 plan be paid through the Chapter 13 Trustee.") (citing 11U.S.C. § 1322(a)(1)); *In re Harris,* 107 B.R. 204, 206 (Bankr.D.Neb. 1989)(concluding that, "in general, debts provided for by the Chapter 13 plan must be paid through the Chapter 13 standing trustee.").

As pointed out by the Fifth Circuit in *In re Foster,* 670 F.2d 478, 486 (5th Cir. 1982), the legislative history also indicates that normally the Chapter 13 trustee is to make distributions, at the same time that Congress envisioned that reorganization under Chapter 13 should be flexible:

5

> Nonetheless, § 1326(b) [now § 1326(c)] "makes it clear that the Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the debtor. . . . . Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor."
>
> *Foster,* 670 F.2d at 486 (quoting S.Rep.No. 989, 95th Cong., 1st Sess. 142 (1978) U.S. Code Cong. & Admin. News 1978, pp. 5787, 5928 and S.Rep. No. 989, 95th Cong., 1st Sess. 141 (1978) U.S.Code Cong. & admin. News 1978, p. 5927). *See also, In re Slaughter,* 188 B.R. 29, 31 (Bankr.D.N.D. 1995) (noting that "[a]lthough there is no express statutory prohibition preventing direct payments, the presumption has always been for distribution made by the trustee.") (citing S.Rep. No. 889, 95th Cong., 2nd Sess. 142 (1978)).

Policy reasons also favor payments through the trustee. Because the chapter 13 trustee system is funded through administrative commissions based on plan payments[5], several courts have found that avoiding the trustee's commission by providing for direct payment of certain creditors is insufficient justification for deviating from the general rule that payments should be disbursed by the Chapter 13 Trustee. *See In re Genereaux,* 137 B.R. 411, 413 (Bankr.W.D.Wash. 1992) (Court was "not persuaded that the Debtor's interest in avoiding the Trustee's fee outweighs the interest of debtors (and creditors) generally in an effective and efficient Chapter 13 system."); *Harris,* 107 B.R. at 207 (avoiding the trustee's commission "should not constitute good cause for permitting direct payments by the debtor"). *See also, Barber,* 191 B.R. at 885 (acknowledging that "numerous courts have recognized that decisions to allow a debtor to act as a disbursing agent for plan payments, thereby endangering the payment of fees and commissions necessary to the operation of the trustee program is a significant concern.") (citations omitted). In addition, if debtors seek to take advantage of the protections afforded under the Bankruptcy Code, they should also be subject to its burdens, including the payment of trustee commissions in order to

---

[5]*See* 28 U.S.C. § 586(e).

6

fund the Chapter 13 trustee program. *See Harris,* 107 B.R. at 207 (finding that "[a] debtor should not be allowed to deny the trustee the percentage fee by paying debts directly. Such a result would frustrate the statutory scheme."). Finally, precisely because many debtors find themselves in bankruptcy because of their inability to manage debt, making one monthly payment to the Chapter 13 trustee simplifies the debtors' finances and allows for better supervisory control by the Chapter 13 trustee. *See* Chapter 13 Trustee's Brief in Support of Objection to Debtors' Direct Payment of Personal Property Debt ("Trustee's Brief"), pp. 13-16. As persuasive as these policy arguments may be, they overlook the plain language of 11 U.S.C. § 1326(c).

The plain language of 11 U.S.C. § 1326(c) is that the plan or the order confirming the plan can "otherwise provide" for payments to creditors under the plan. 11 U.S.C. § 1326(c). The code, therefore, does not prohibit direct payments at the same time that it presumes that most payments will be made through the trustee. *See In re Aberegg,* 961 F.2d 1307, 1309 (7th Cir. 1992) (discussing § 1326(c) and § 1322(a)(1), and finding that the language in § 1322(a)(1) "has been uniformly interpreted as giving bankruptcy courts the discretion to permit debtors to make payment directly to some secured creditors, provided that the plan meets all the confirmability requirements set forth in § 1325(a)."); *In re Foster,* 670 F.2d 478, 486 (5th Cir. 1982)("We agree with those courts which have concluded that Congress left open in § 1326(b) [now codified at §1326(c)] the possibility of direct disbursements 'under the plan' by the Chapter 13 debtor.") (citing *In re Case,* 11 B.R. 843, 846 (Bankr.D.Utah 1981))(remaining citations omitted). Even courts that conclude that a debtor should not be allowed to deviate from the general presumption that all plan payments should be made through the trustee absent significant or compelling

7

reasons acknowledge that the Bankruptcy Code allows debtors to act as disbursing agents. *See, e.g., Perez,* 339 B.R. at 390 (acknowledging that "the Bankruptcy Code does allow for debtors to bypass the trustee and make payments directly to creditors."); *Barber,* 191 B.R. at 884 ("Based upon a plain reading of § 1326(c), Congress clearly envisioned 'the possibility of direct disbursements 'under the plan' by the Chapter 13 debtor.'")(quoting *In re Foster,* 670 F.2d at 486)); *Harris,* 107 B.R. at 206 (noting that "[t]here is no statutory requirement that all claims provided for in a Chapter 13 plan be paid through the trustee."); *Reid,* 179 B.R. at 507 ("Section 1326(c) demonstrates that this method of disbursement is not exclusive . . . "). Because the language in 11 U.S.C. § 1326(c) clearly contemplates that some payments will not be made by the trustee, it is not appropriate for this Court to impose a general rule requiring that *all* payments called for in a plan of reorganization be disbursed by the Chapter 13 Trustee.

The Chapter 13 Trustee argues that in order to confirm a plan that "otherwise provides," a debtor must show compelling reasons for making direct payments to secured creditors outside the plan. Whether a debtor can act as a disbursing agent rather than the trustee begins with the premise that such a determination is committed to the discretion of the bankruptcy court. *Foster,* 670 B.R. at 486 ("[T]he designation of the debtor as disbursing agent is very much a matter left to the considered discretion of the bankruptcy court."). In considering whether to allow a debtor to make direct payments, courts often consider many of the following factors:

> whether the debt is modified by the plan, the sophistication of the creditor, the ability and incentive of the creditor to monitor payments, whether the debt is a commercial or consumer debt, the ability of the debtor to reorganize absent direct payments, whether the payment cannot be delayed, the number of payments proposed to satisfy a claim, whether a direct payment by debtor under the plan will impair the trustee's ability to perform his or her standing trustee duties, and unique or special circumstances of a particular case.

8

*Harris,* 107 B.R. at 207.[6]

However, given that the Bankruptcy Code does not expressly prohibit direct payments, and because 11 U.S.C. § 1326(c) contemplates that the plan can "otherwise provide" for direct payment, the Court finds that confirmation should be granted unless the secured claim the debtor proposes to pay directly outside the plan is modified in some way, or the plan otherwise fails to meet the requirements for confirmation outlined in 11 U.S.C. § 1325(a), i.e., the plan is not feasible (§ 1325(a)(6)), the proposed payment will unfairly discriminate (§ 1325(a)(1) and § 1322(b)(1)), or the plan was not proposed in good faith (§ 1325(a)(3)). In other words, the

---

[6]*See also, Perez,* 339 B.R. at 409, summarizing the factors articulated by several courts in considering whether to confirm a plan providing for direct payments to creditors as follows:

(1) the degree of responsibility of the debtor, as evidenced by his past dealing with his creditors, *Foster,* 670 F.2d at 487; (2) the reasons contributing to the debtor's need for filing a Chapter 13 petition and plan, *Id.*; (3) any delays that the trustee might make in remitting the monthly payment to the targeted creditor, *Id.*; (4) whether the proposed plan modifies the debt, *Reid*, 179 B.R. 504, 508 (E.D.Tex.1995) (citing *In re Gregory*, 143 B.R. 424 (Bankr.E.D.Tex.1992)); (5) the sophistication of the targeted creditor, *Id.*; (6) the ability and incentive of the creditor to monitor payments, *Id.*; (7) whether the debt is a commercial or consumer debt, *Id.*; (8) the ability of the debtor to reorganize absent direct payments, *Id.*; (9) whether the payment can be delayed, *Id.*; (10) the number of payments proposed to pay the targeted claim, *Id.*; (11) whether a direct payment by the debtor under the proposed plan will impair the trustee's ability to perform his standing trustee duties, *Id.*; (12) unique or special circumstances of a particular case, *Id.*; (13) the business acumen of the debtor, *In re Genereux*, 137 B.R. 411, 412-13 (Bankr.W.D.Wash.1992) (citing *In re Pianowski*, 92 B.R. 225, 233-34 (Bankr.W.D.Mich.1988) (enumerating thirteen factors to be considered in determining whether to allow a Chapter 12 debtor to make direct payments)); *In re Bettger*, 105 B.R. 607, 609 (Bankr.D.Or.1989) (reducing the *Pianowski* factors to eight and applying those factors to determine whether to permit a Chapter 13 debtor to make direct payments); (14) the debtor's post-filing compliance with statutory and court-imposed duties, *Id.*; (15) the good faith of the debtor, *Id.*; (16) the plan treatment of each creditor to which a direct payment is proposed to be made, *Id.*; (17) the consent, or lack thereof, by the affected creditor to the proposed plan treatment, *Id.*; (18) the ability of the trustee and the court to monitor future direct payments, *Id.*; (19) the potential burden on the trustee, *Id.*; (20) the possible effect upon the trustee's salary or funding the U.S. Trustee system, *Id.*; and (21) the potential for abuse of the bankruptcy system, *Id.*

9

Debtors need not demonstrate *compelling* circumstances in order to justify confirmation of a plan that provides for direct payment according to the contract terms to a creditor that is fully secured by personal property, provided the Debtors do not otherwise seek to modify the creditor's claim, and provided that the plan otherwise meets all requirements for confirmation. *Cf. Foster,* 670 F.2d at 486-88 (agreeing within the context of proposed direct payment by debtors of their current mortgage payments "that Chapter 13 permits a debtor to act as disbursing agent, subject to the bankruptcy court's 'feasibility' determination under 11 U.S.C. § 1325(a)(6)" and noting that "[i]f the bankruptcy court concludes that the debtor's acting as disbursing agent with respect to the current mortgage payments will not impair the debtor's ability to make all payments under, and to comply with, the plan, then the court is obligated to confirm the plan, assuming it complies in all other respects with § 1325(a)," but ultimately concluding that debtor could not provide for direct payments of the current portion of a mortgage claim and at the same time cure the arrears through the plan); *Aberegg,* 961 F.2d at 1310 (concluding that "a bankruptcy court may approve a plan under which the debtor will act as disbursing agent . . . provided that the plan is confirmable under § 1325).

In *In re Clay,* 339 B.R. 784 (Bankr.D.Utah 2006), the bankruptcy court considered whether the debtor was entitled to make direct payments outside the plan on two mortgages and a car loan. *Id.* At 785. The bankruptcy court held that the debtors could make direct payments on these debts provided that such creditors were paid according to their contract terms. *Id.* (concluding that "Chapter 13 debtors may still choose to pay secured creditors directly so long as those debts are paid pursuant to the contract terms."). The Utah bankruptcy court also considered whether the changes made to the Bankruptcy Code by the Bankruptcy Abuse

10

Prevention and Consumer Protection Act of 2005 ("BAPCPA") affected a debtor's right to make direct payments, and found that the changes contained in BAPCPA do not impact the code provisions that allow for direct payments. *Id.* at 786-789. This Court agrees with the conclusion in *Clay,* and finds that a debtor may choose to pay a secured creditor outside the plan provided the debtor is not seeking to modify the rights of the creditor in any way, and provided that the plan otherwise complies with the requirements of 11 U.S.C. § 1325(a). The *Clay* court quotes *In re Case,* 11 B.R. 843 (Bankr.D.Utah 1981)[7] for the proposition that debtors can provide for direct payment to secured creditors independent of the Chapter 13 Trustee as long as debtors do not seek to modify the rights of the secured creditor:

> [T]he wording of Section 1325(a)(5) which deals only with secured claims 'provided for by the plan' would seem to anticipate that some secured claims would, in fact, not be handled pursuant to a plan . . . Likewise, however, the debtor would not be entitled to evoke the 'cram down' provisions of Section 1325(a)(5), but would be left either to pay the debt according to the original contract or to bargain with the creditor for such terms as the creditor is willing to accept . . . The Trustee would have no duty to supervise the execution of this independent relationship, and the creditor would be left on its own to work directly with the debtor.

*Case,* 11 B.R. at 847-48.

---

[7]*Case* was superceded by statute to the extent that *Case* determined that whether payments are made directly to a creditor by the debtor or disbursed by the trustee all payments are subject to the trustee's fee. *See Clay,* 339 B.R. at 786, n.8 and n.10 (noting that *Case* was partially abdicated by changes to 28 U.S.C. § 586(e) which now provides that the trustee only collects fees on disbursements made by the trustee) (citing *In re Sorrell,* 286 B.R. 798, 803 n.2 (Bankr.D.Utah 2002)). In addition, the statement in *Case* that "secured creditors may be handled wholly outside of the plan . . . . since every secured claim must ordinarily be classified separately as each involves a different claim to property of the debtor, [so that] there appears to be nothing improper in allowing such a claim to be excluded from treatment under the plan and to be handled individually by the debtor" is dicta. *Clay,* 11 B.R. at 847 ("although not accomplished here . . ."). *Case* considered whether a debtor who sought to modify a secured creditor's claim under § 1325(a)(5) could provide for direct payment, and concluded that the debtor could not. *See Clay,* 339 B.R. at 785 (discussing the holding of *Case*).

11

The reasoning quoted above contemplates direct payment by a debtor who includes no provision for the claim in the plan, so that not only would there be no trustee's commission on such payment because it is not "provided for" under the plan, but the claim would not be subject to discharge.[8] *Id.* at 847-848. In this case, the Debtor's plan states that the claims of NMEFCU and GMAC will be paid directly, so that such claims are, in fact, "provided for" in the plan. *See Harris,* 107 B.R. at 209 ("To 'provide for' a claim a plan need only 'make a provision for it, i.e., deal with it or refer to it.'")(quoting *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118, 1122 (9th Cir. 1983)). Nevertheless, because 11 U.S.C. § 1326(c) contemplates that some payments can be made other than through the Chapter 13 trustee, the Court agrees with *Clay* insofar as *Clay* observes that a debtor "is entitled to pay . . . secured creditors directly so long as those creditors are paid pursuant to the contract terms" and provided the plan otherwise meets all confirmation requirements. *Clay,* at 789.

One of the cases cited by the Chapter 13 Trustee for the proposition that direct payments should be allowed only in very limited circumstances is *In re Barber,* 191 B.R. 879 (D.Kan. 1996). In *Barber,* the District Court reviewed the bankruptcy court's denial of confirmation of a plan which provided for direct payments. 191 B.R. at 883. The *Barber* court agreed that "deviation from the normal periodic payments by the trustee should only be departed from when the debtor can demonstrate a significant reason for doing so, " and held that the bankruptcy court did not abuse its discretion in denying confirmation of a plan which proposed to make direct

---

[8] *See Harris,* 107 B.R. at 206 (stating that "A debtor may choose not to provide for one or more secured claims and elect instead to pay those claims directly to the creditor outside the plan. The lien securing those claims merely passes through the bankruptcy unaffected . . . . [such claim] will not be eligible for discharge. A Chapter 13 plan may simply be silent on a particular secured debt, such as a car loan, and thus not 'provide for' the payment of the debt.").

12

payments on a vehicle. *Barber,* 191 B.R. at 885-886 (quoting *In re Gregory,* 143 B.R. 424, 427 (Bankr.E.D.Tex. 1992). However, while the bankruptcy court noted that the preference is for payments to be made through the trustee and concluded that there was "no reason to deviate from the norm," the bankruptcy court based its determination in part on the fact that the debtors proposed to pay more to the creditor than the value they placed on the asset in their schedules, and that the debt included more than the amount advanced for the car loan. *Id.* at 882. Thus denial of the debtors' proposed direct payment in *Barber* was due at least in part to the fact that the plan created an unfair preference in favor of the creditor. This is consistent with this Court's determination that whether a plan can provide for direct payment is dependent upon other confirmation requirements, rather than on whether a debtor provides sufficient or compelling circumstances to justify direct payment.

The Chapter 13 Trustee also contends that new provisions in the Bankruptcy Code enacted by BAPCPA militate against allowing debtors to act as disbursing agents. Specifically, the Chapter 13 Trustee asserts that neither 11 U.S.C. § 1326(a)(1) nor 11 U.S.C. § 707(b)(2) as incorporated into chapter 13 make sense if debtors are allowed to act as disbursing agents for claims secured by personal property, because 11 U.S.C. § 1326(a)(1)(C) seems to require the debtor to make adequate protection payments which will be credited against plan payments, and because the means test does not instruct debtors to reduce their income by the actual monthly payment. *See* Trustee's Brief, p. 7. In addition, the Chapter 13 Trustee points to the additional supervising and monitoring duties imposed on Chapter 13 Trustees by BAPCPA, such as the requirement for the trustee to verify the filing of all tax returns as required under 11 U.S.C. § 1308 and the requirement to provide notice to holders of domestic support obligations under 11

13

U.S.C. § 1325(a)(8). *See* Amicus Brief of NACCT, pp 9-10. The Chapter 13 Trustee asserts that these changes evince an intent by Congress to assert more strict oversight and control over the bankruptcy process, lending further support to the position that debtors should not be allowed to act as their own disbursing agents. Finally, the Chapter 13 Trustee asserts that the mandated use of new, more detailed forms for final reports, will be frustrated by direct payments because the trustee will not have information regarding a debtor's direct payments which is necessary for the trustee to prepare a complete and accurate final reports. *See* 28 U.S.C. § 589(b)(d).[9]

BAPCPA has imposed additional requirements on both debtors and trustees. But whatever the additional requirements imposed on Chapter 13 trustees by BAPCPA, the language

---

[9]The subsection added to Title 28 by P.L. 109-8, Title VI, § 602(a), addressing the contents of the final reports states that the uniform forms to be used by trustees in preparing final reports shall include the following information:
(1) information about the length of time the case was pending;
(2) assets abandoned;
(3) assets exempted;
(4) receipts and disbursements of the estate;
(5) expenses of administration, including for use under section 707(b), actual costs of administering cases under chapter 13 of title 11;
(6) claims asserted;
(7) claims allowed; and
(8) distributions to claimants and claims discharged without payment, in each case by appropriate category and, in cases under chapters 12 and 13 of title 11, date of confirmation of the plan, each modification thereto, and defaults by the debtor in performance under the plan.

28 U.S.C. § 589(b)(d).

If the final report requires information concerning direct disbursements and the Chapter 13 Trustee is unaware of whether the debtor has completed direct payments called for under the plan, the Chapter 13 Trustee can state on her final report that whether such payments have been made is "unknown." In addition, because secured creditors generally monitor payments from debtors closely and seek relief from the automatic stay in the event a debtor misses a payment, it will be apparent in that situation from the documents filed in the debtor's bankruptcy proceeding that the debtor has failed to complete the direct payments called for under a confirmed plan.

14

in 11 U.S.C. § 1326(c) following BAPCPA remains the same. Therefore, the Court cannot conclude that BAPCPA abrogated a debtor's ability to "otherwise provide" for payments under a chapter 13 plan. *See Clay,* 339 B.R. at 788 (rejecting the trustee's contention that BAPCPA, and specifically § 1326(a)(1)(C) regarding adequate protection payments installs a presumption that all payments must be made through the trustee and eliminates a debtor's ability to pay secured creditors directly under the terms of the contract.)

Having found generally that it is possible for a debtor to act as the disbursing agent for fully secured claims paid according to their contract terms and thereby avoid payment of the Chapter 13 Trustee's commission on such payments, the Court must consider whether the Debtors' plan otherwise meets all requirements for confirmation.[10] The proof of claim filed by GMAC is consistent with the amount of debt and the collateral value for the claim of GMAC scheduled by the Debtors. The Debtors' proposal to pay GMAC directly outside the plan on its fully secured claim according to the contract terms is, therefore, not a bar to confirmation.[11]

However, there is insufficient information before the Court with regard to the claim of NMEFCU to determine whether the Debtors' plan is confirmable. The Debtors' supplement to

---

[10]The Debtors' plan does not seek to modify the claims of NMEFCU or GMAC insofar as neither debt has been crammed down by the Debtors under 11 U.S.C. § 1325(a)(5). Indeed, it is possible that the debt to GMAC constitutes a debt which, under 11 U.S.C. § 1325(a)(9), cannot be modified. As noted in *Clay,* 11 U.S.C. § 1325(a)(9) lends further support for the proposition that debtors can provide for direct payments to such creditors, since pre-BAPCPA, courts generally allowed debtors to provide for direct payments to mortgage creditors, in part, because of the prohibition against modification of mortgages against a debtor's principal residence contained in 11 U.S.C. § 1322(b)(2). *Clay,* 399 B.R. at 788.

[11]The Debtors' Schedule J includes the payment to GMAC as a budgeted expense; the payment, therefore, does not make the plan infeasible. And because GMAC is fully secured, payment of its claim does not create an impermissible preference.

their Chapter 13 plan states that the last projected full monthly payment to NMEFCU is October 13, 2010, with a final payment of $140.54 due November 13, 2010, yet the latest contract attached to NMEFCU's proof of claim appears to provide for a sixty-month repayment period on a debt of $16,016.05, beginning April 10, 2004.[12] The Chapter 13 Trustee asserts that the final payment should occur in October 2007. No evidence or testimony was presented with regard to NMEFCU's claim at the final hearing on confirmation of Debtors' plan of reorganization. Based on the amended proof of claim, Debtors' supplement, and the Chapter13 Trustee's objection, it is impossible for the Court to determine the total amount of the payments Debtors propose to disburse directly to NMEFCU under their plan. Therefore, it is not possible for the Court to make a determination as to whether the Debtors are paying more than the value of the collateral securing the debt to NMEFCU and, consequently, whether Debtors' plan may impermissibly discriminate in favor of NMEFCU. *See* 11 U.S.C. § 1322(b)(1). The Court, therefore, concludes that while Debtors may propose to make direct payments to fully secured creditors outside the plan, Debtors' plan cannot now be confirmed because there is insufficient evidence regarding the claim of NMEFCU now before the Court. Consequently, confirmation will be denied.

---

[12]NMEFCU's amended proof of claim attaches three loan documents: 1) a funds advance voucher dated April 11, 2003 for $10,000.00 secured by a Honda 2003 VTX motorcycle; 2) a funds advance voucher dated March 2, 2004, identified as a consolidated loan, secured by a 2000 Chrysler; and 3) a funds advance voucher dated July 16, 2002 for an unsecured signature loan in the amount of $2,000.00.

This Memorandum constitutes the Court's findings of fact and conclusions of law entered pursuant to Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Copies to:

Kelley L. Skehen
Chapter 13 Trustee
625 Silver SW, Suite 350
Albuquerque, NM 87102

William P. Gordon
Attorney for Debtors
2501 Yale Blvd SE Ste 204
Albuquerque, NM 87106 -4357

17